IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01503-REB-KLM

TERRY L. PERKINS,
TERESA A. PERKINS, and
TODD PERKINS,

　　Plaintiffs,

v.

JERRY JOHNSON, d/b/a Jupiter Lending, and
MATTHEW GREEN, individually and d/b/a Jupiter Lending,

　　Defendants,

LEONID SHIFRIN, individually and d/b/a Jupiter Lending,

　　Defendant and Third-Party Plaintiff,

JENNIFER M. FRY, d/b/a Mile High Mortgage Planning, d/b/a Mile High Mortgage Process,

　　Third-Party Defendant.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　This matter is before the Court on *pro se* Third-Party Defendant Jennifer M. Fry's (Fry) Motion to Dismiss and Answer [Docket No. 101, Filed October 25, 2007] ("Motion to Dismiss"). Although Fry's pleading purports to serve as both a motion to dismiss and a substantive answer to *pro se* Defendant and Third-Party Plaintiff Leonid Shifrin's (Shifrin) third-party complaint, the Court elects to treat it as a motion pursuant to Fed. R. Civ. P. 12(b)(5), because the allegations contained in Fry's pleading raise a dispositive issue regarding service of the third-party complaint. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.

Colo. L. Civ. R. 72.1.C, this matter has been referred to this Court for recommendation. An evidentiary hearing was conducted on December 6, 2007. The Court has reviewed and considered the pleadings, the testimony and exhibits introduced into evidence at the hearing, and this matter is ripe for determination. For the reasons set forth below, the Court recommends that the Motion to Dismiss be **denied**.

## I. Procedural Background

*Pro se* Defendant Leonid Shifrin filed a "Cross-Claim and Complaint" against Fry d/b/a Mile High Mortgage Planning and d/b/a Mile High Mortgage Process ("Mile High") on August 27, 2007 [Docket No. 73] (hereinafter "Third-Party Complaint"). On September 16, 2007, Shifrin sought to have his girlfriend, Qilly Yankovich (Yankovich), serve Fry with a Summons and the Third-Party Complaint. When Fry failed to respond to the Third-Party Complaint, Shifrin moved for entry of default, which was entered by the Clerk on October 19, 2007 [Docket No. 94]. However, by Order dated November 14, 2007, the Court *sua sponte* struck the Clerk's entry of default against Fry because the return of service did not indicate which documents had allegedly been served on her [Docket No. 106].[1]

Fry filed the Motion to Dismiss on October 25, 2007 [Docket No. 101]. In it, Fry

---

[1] Shifrin also moved for, and obtained, an entry of default against Mile High [Docket No. 87; Docket No. 94]. As noted above, the Clerk's entry of default has now been stricken as to Fry [Docket No. 106]. As to Mile High, the Court notes that the Third-Party Complaint merely listed Mile High as a name under which Fry allegedly conducted business. In addition, none of the returns of service in the Court's record certify service of the Summons and Third-Party Complaint on Mile High, and Shifrin presented no evidence regarding such service. Accordingly, the Court determines that Mile High has not been properly named as a party to the Third-Party Complaint and was not properly served with the Third-Party Complaint. As such, the Court *sua sponte* strikes the Clerk's entry of default as to Mile High.

2

raised the issue of whether she had been properly served with the Third-Party Complaint. Shifrin raised the issue of the timeliness of Fry's Motion to Dismiss in a Motion to Strike [Docket No. 104; filed October 31, 2007], which he was later granted permission to withdraw [Docket No. 113; filed November 29, 2007]. The adequacy of service of the Summons and Third-Party Complaint upon Fry was the subject of an evidentiary hearing held on December 6, 2007.

## II. Facts at Issue

Fry testified that she was not at home when Yankovich came to her house on September 16, 2007 to serve her with the Summons and Third-Party Complaint.[2] Fry's thirteen-year-old daughter answered the door. Fry's female friend, Erica, who was sitting on a couch visible from inside the doorway, informed Yankovich that Fry was not home. According to Fry, neither her daughter nor Erica saw Yankovich leave any documents at the home. Fry testified that several days later, she found the court papers on her back porch "by the pooper scooper and the rake." Fry further testified that her delay in responding to the Summons and Third-Party Complaint was because she "was told it would cost $150.00 to file the Answer," and because she needed to save the funds to pay the filing fee. She testified that she later learned from an unknown male employee of the Clerk's office that no filing fee was required, thus she filed her Motion to Dismiss out-of-time. Fry did not call either her daughter or Erica to testify as a witness on her behalf.

Yankovich testified that she had tried to serve Fry at least three times prior to

---

[2] Although Fry claims she was not home, she claims that she later identified the process server as Shifrin's girlfriend based on the description of the process server provided by her daughter. Further, Fry admitted that she is currently unemployed.

September 16, 2007. On the day in question, she and Shifrin waited in Shifrin's car outside Fry's house to attempt to serve her. Yankovich saw a woman outside Fry's home, and Shifrin told her the woman appeared to be Fry.[3] Yankovich stated that she then knocked on the back door of Fry's home, and the door was answered by Fry's teenage daughter. Yankovich asked if her mother was there, and Fry's daughter said, "Mom, are you here?" Yankovich testified that she heard a voice from inside the house say, "I'm not home." Yankovich stated that she looked inside the home and saw a woman approximately forty-five years of age who resembled Fry sitting on the couch. The woman on the couch said, "She's not here." Yankovich asked the woman on the couch if she was over eighteen, and the woman replied that she was not. According to Yankovich, the woman on the couch did not have the same voice as the person whom she heard say, "I'm not home." The woman on the couch did not get up, and Yankovich stated that she threw the Summons and Third-Party Complaint on the threshold of the open door in view of the woman on the couch and Fry's daughter. Yankovich testified that Fry's daughter was not confused or scared and seemed to be "very nice."

It is undisputed that Yankovich went to Fry's house on September 16, 2007 in an attempt to serve Fry with the Summons and Third-Party Complaint, and that Fry's daughter answered the door. It is also undisputed that the woman on the couch was not Fry.[4]

---

[3] Shifrin and Fry were co-workers from 1999 until February 2006, and thus Shifrin is familiar with Fry's appearance.

[4] Shifrin submitted an affidavit signed by Yankovich as an exhibit to a motion that has now been withdrawn [Docket No. 104; filed October 31, 2007]. Although the affidavit indicates that Yankovich believed the person on the couch to be Fry, Yankovich testified that after seeing Fry in court the day of the hearing, she believes

4

It is disputed whether Fry was at home when Yankovich attempted to serve the papers, and whether Fry was seen in her driveway just prior to service. It is also disputed whether Fry's daughter or the woman on the couch saw Yankovich leave the court papers at Fry's house.

III. Factual Findings and Legal Analysis

Fed. R. Civ. P. 4(e)(2)(B), as amended December 1, 2007, specifies that service of a summons and complaint upon an individual is effective by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."[5]

Although the Court has serious doubts about the credibility of both Fry and Yankovich, on balance, the Court accepts Yankovich's version of the events. Without deciding whether Fry was, in fact, present at the time when Yankovich left the court papers

---

the person on the couch was not Fry. The Court notes that there were several additional inconsistencies between Yankovich's testimony and her affidavit. The affidavit indicates that "Fry . . . saw me leave the summons and complaint at the house." But Yankovich testified that she did not see Fry inside the house and that, rather, the woman on the couch saw her leave the papers. In addition, the affidavit indicates that Fry's daughter affirmatively told Yankovich that Fry was home. When prompted by the Court to give testimony about her interaction with Fry's daughter, Yankovich did not inform the Court that the daughter said Fry was home. The affidavit also says that Yankovich never saw Fry before September 16, 2007, but she testified that she met Fry previously at a Christmas party. Finally, the Court asked Yankovich if she signed an affidavit in connection with this case, and she immediately responded, "no," then looked at Shifrin who was nodding, "yes." Yankovich then responded: "I did? Hmm, well I guess I did then."

[5] The Federal Rules of Civil Procedure were amended, primarily for stylistic purposes, effective December 1, 2007. The previous version, found at Fed. R. Civ. P. 4(e)(2), is virtually identical to the December 1, 2007 version, and required the same activity quoted above.

5

at her home, the Court is persuaded that Yankovich's act of leaving the papers on the threshold of Fry's home in the sight of her thirteen-year-old daughter satisfies the requirements for service pursuant to Fed. R. Civ. P. 4(e)(2)(B).

The Federal Rules of Civil Procedure do not define the attributes of a person of "suitable age and discretion."[6] While "there is a relative dearth of published opinions defining the contours of 'suitable discretion,' . . . it is clear that the amount of discretion necessary to satisfy the rule is rather low." *Flowers v. Klatick*, No. 93 C 6606, 2004 WL 2005814, at *2 (N.D. Ill. Sept. 1, 2004) (unpublished opinion). Although limited, case precedent informs the Court that a thirteen-year-old can be of suitable age and discretion. *See United Servs. Auto Ass'n v. Barger*, 910 F.2d 321, 324 (6th Cir. 1990) (holding that target's thirteen-year-old son was of suitable age and discretion to effect service); *Holmen v. Miller*, 206 N.W.2d 916, 919-20 (Minn. 1973) (disputing that fourteen was the lowest age range for suitability and affirming the lower court's ruling that target's thirteen-year-old daughter was of suitable age); *see also Trammel v. Nat'l Bank*, 285 S.E.2d 590, 592 (Ga. Ct. App. 1981) (leaving summons and complaint with target's twelve-year-old son was effective service).

---

[6] Although the Colorado Rules of Civil Procedure provide that service upon an individual on behalf of another is effective only if that person is eighteen years old or older, Colo. R. Civ. P. 4(e)(1), the Federal Rules provide that service may be effected by **either** following the rules that apply to the forum state, Fed. R. Civ. P. 4(e)(1), **or** by applying the requirements of Fed. R. Civ. P. 4(e)(2). *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1094, at 512 (3d ed. 2002) ("If Plaintiff chooses to follow one of the specific means of service set out in [Rule 4(e)(2)] and complies with the prescribed procedure for doing so, service is effective regardless of whether or not that mode of service is valid under the forum state's law."). Here, the Court applies the requirements of Fed. R. Civ. P. 4(e)(2)(B) and considers whether a thirteen-year-old can be of suitable age and discretion.

6

The record before the Court regarding Fry's daughter is that she was friendly, able to communicate, and did not seem upset or confused by Yankovich's visit. In fact, according to Fry, her daughter was able to describe Yankovich sufficiently so that Fry was able to identify Yankovich from the description. Although Fry did not provide her daughter's birth date, she turned fourteen years old between the date of attempted service (September 16, 2007) and the date of the hearing (December 6, 2007). Fry bears the burden of rebutting that service was ineffective, including that her daughter was not of suitable age and discretion. *See Costin Eng'g Consultants, Inc. v. Latham*, 164 F.R.D. 521, 523 (D. Colo. 1996). Fry did not testify that her daughter lacked sufficient capacity to understand or accept service. Her primary argument was that her daughter is an "innocent child." On this record, Fry's testimony regarding her daughter's "innocence" is not persuasive regarding her suitability to accept service. The Court concludes that Fry's daughter was an appropriate recipient of the court papers.

The Court also notes that the act of leaving the court papers on the threshold of the open door leading into the house, in view of Fry's daughter, satisfies the obligations of service pursuant to Rule 4(e)(2)(B). Delivery in hand is not required for service to be effective. In fact, particularly here where there is evidence that Fry has attempted to evade service, service may be effective by leaving the papers on the ground. *See, e.g.*, *Int'l Controls Corp v. Vesco*, 593 F.2d 166, 177-78 (2d Cir. 1979) (throwing papers over fence onto defendant's lawn was sufficient service); *Errion v. Connell*, 236 F.2d 447, 457 (9th Cir. 1956) (pitching papers through hole in screen door while defendant was hiding inside was sufficient service); *Currie v. Wood*, 112 F.R.D. 408, 409 (E.D.N.C. 1986) (leaving court

7

papers on the seat of a vehicle presumed to be defendant's was sufficient service). Considering the testimony presented and the demeanor of the witnesses, the Court finds Fry's testimony that she found the papers on the porch several days after September 16, 2007 to lack credibility, and rejects it.

In addition, although the parties do not raise the issue, the Court notes that Yankovich was a proper individual to effect service. Fed. R. Civ. P. 4(c)(2) directs that "[a]ny person who is at least eighteen years old and not a party may serve a summons and complaint." Indeed, "Rule 4 means precisely what it says, . . . *any* person over 18, who is not a party to the suit may serve the summons and complaint." *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986) (holding that fellow prisoners of prisoner Plaintiff could serve defendant guards under Rule 4). While Yankovich is apparently Shifrin's girlfriend, she is older than eighteen and not a party to the case. *See* Affidavit of Quilly Yankovich [Docket No. 104, at 5]. As such, the Court determines that service by her was effective. *See, e.g.*, *Africa v. Anderson*, 510 F. Supp. 28, 34 (E.D. Pa. 1981) (finding that service by an acquaintance of plaintiff satisfied the requirements of Rule 4(c)).

Because the Court finds that Fry was properly served as of September 16, 2007, her response to the Third-Party Complaint was due October 8, 2007. She did not file the Motion to Dismiss until October 25, 2007. As such, her response was untimely. However, in the interests of promoting both judicial economy and justice, the Court elects to accept the response as filed.[7]

---

[7] As noted *supra*, Fry's response consisted of both a Motion to Dismiss and an Answer. The latter responds to the allegations of each paragraph of the Third-Party Complaint with specific admissions or denials thereof.

8

IV. Conclusion

Because I find that service was effective on September 16, 2007, I RECOMMEND that Fry's Motion to Dismiss be **denied**.

Pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: December 18, 2007

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix